Our next case, United States v. Freddie Sinkler. You may proceed. Allen Welch from Harrisburg on behalf of Appellant Freddie Sinkler. I have not asked to reserve any time. I don't believe it would be necessary. This case, after years of fighting back and forth between the district court and this court. We're not fighting. We're reasoning together. There you go. Thank you. I think it's reached the point where Mr. Smith and I are now arguing over what the exact scope of the appeal should be here at this point. It's my position that after the district court determined that there was no inventory search by denying the Commonwealth or failing to recognize the Commonwealth's argument before that there was an inventory search, that we're left with considering on whether or not what we have here is an inevitable discovery issue. And the argument that I'm making is that they have not done anything as suggested in the last opinion they had to do to show that there would have been inevitable discovery. In fact, I think the language that we found in the last opinion was something to the effect of, I don't, the district court does not recognize inevitable discovery here. However, we did not recognize inventory search basis for the search at Cedar. But we will recognize inevitable discovery based on the inventory search that was going to be done anyway. Well, inevitable discovery assumes that there was at some point a proper inventory search. Certainly would have to. Yeah. And I guess our record still is a little fuzzy on that as to exactly what did or would have or should have or routinely was done at the station house. Is there going to be another suppression hearing? No. I'm just asking you to give us your view of the record and how these things unfolded improperly, I guess you would say. As I read the record, I think what strikes me most is police officers testifying that their inventory policy would be to take an inventory and search everything that's found in a car once the automobile is seized. And I'm dealing with a backpack that's 15 or 20 feet away from the car, which we felt probably was, they're reaching a bit to put this back into the car so that they can then justify the search of it later on as something that would have inevitably happened. If you're going to search what's in the vehicle, how far afield are we going to run picking up everything in the neighborhood and putting it into the vehicle before we have it towed it in so we could then search it? Was the backpack put back in the vehicle or was it taken separately to, I mean I assume the vehicle gets impounded somewhere and queried as the backpack get back into the vehicle and go to be impounded and then arguably a property report filed or at the station house or is the record clear as to what happened? I don't believe the record is and quite frankly I had never considered that. It raises an interesting proposition here. Does it make any difference? Can I ask you, maybe I'm a little confused. Yes sir. I thought, maybe I'm a lot confused. I thought you were challenging not the correctness of Judge Payne's decision as a matter of law on the record she had before, that you were challenging the fact that she made a determination of inevitable discovery when that issue had never been raised before and therefore there was inadequate opportunity for counsel to offer evidence that might relate. As I take it you weren't saying that Judge Payne, assuming everybody had raised all the arguments in a proper fashion, that she didn't reach the right result. Rather only that she reached a result much like a Judge Suosponte making a summary judgment motion or not giving a fair chance to counsel to bring to bear all relevant evidence on the issue before the court. That's what I thought was at stake here in this appeal. I didn't think that I was limiting my argument simply to that. There's no doubt that I discussed that a bit, but I also think the law is clear that she can, Suosponte, raise anything she thinks is appropriate. I think any court can do that. I can say that I'm bothered when I see it after, in 26 years of this business I have yet to have a judge help me. Here's the issue. Issues presented. One, there's only one. It's page one of your brief. It says, did the district court err when it found that the inevitable discovery exception to the warrant requirement of the Fourth Amendment applying the case where such exception was not raised by the government, an appellant did not have the opportunity to challenge any evidence that supported that exception. Period. You're correct. That being the case, how did you not have the opportunity to challenge the nature of the search that, actually the nature of the inventory search to the same extent as you could have if someone said, oh, inevitable discovery. Clearly there was evidence as to what the police did and what their routines were. And had you wanted to, you could have probed the consistency and uniformity, which is what you're objecting to. You're objecting to the lost opportunity to challenge their practice. There was loads of testimony about their practice. What more do you want to ask about their practice that you didn't have an opportunity to do? Well, understand that I did not do any of the suppression hearings. I don't. Successor counsel, and I had to live with what they put in front of me. But what you're noting here with my brief and my statement of the issue is certainly correct. Obviously my consideration of the case, I've drifted a little bit far afield from that specific issue. If I'm limited to that issue, I think the government's response to it is pretty correct, and I think I'm out of court. All right. Now let me ask you a question. In your conclusion, and were we to consider your conclusion as setting forth argument or issue, you state, at the very least this matter should be remanded to the district court again so the hearing can be held wherein Sinclair can cross-examine the police as to the Harrisburg Police Department's inventory rules as they relate to whether or not the evidence would have inevitably been discovered. Yes. Wasn't that done? Yeah. I'm curious that you're asking for a remand as compared to say that the government They introduced the inventory policy. It's an exhibit, actually exhibit. It was cross-examined. You said it, and I read it. Well, we all did. Help me out here. Where was this evidence about policy at the courthouse, at the courthouse at the police headquarters? Well, the exhibit. That was introduced, I believe, at the first session. Yeah. No. This is the second one. We're talking September 8th, I assume. September 8th. General order number 6347, towed and abandoned vehicles. That's the general. That's the general. And it was even pointed out by counsel that when you find something that's evidence, there's a different report that they use to inventory, that if they find something that's evidential, then that goes on a different report. It was all cross-examination about that. They found only CDs in the car other than what was in the backpack. But in the car itself, I think they found CDs worth more than $5 is what the policy says. I mean, there was a lot of cross-examination on the inventory policy. Inventory policy with respect to closed containers at the station house. Well, they said it was not in writing, but all three officers testified that it was their policy, even though it wasn't in writing in the general order, that they would inspect closed containers because they were afraid if they didn't, somebody would say there were gold bars inside the closed containers and they were stolen by the police. And nothing, I mean, everybody understood here that the inventory policy was an issue, at least the way I read it, and the defense offered nothing on that. Everything that came in came in through the police officers. Well, that's the point. His point is nothing came in from the defense because the issue wasn't in the case. Okay. We interrupt you. You go ahead. Frankly, I have nothing further. I'm not sure I can based on the limitations I placed on myself in the brief. So if the Court has no further questions, I'll stick with the brief. I don't want to let you give up right away. Let me ask you at least this. What kind of ‑‑ if we sent this back, okay, if, you know, subjunctive, but if we sent this back, if we were to send it back, exactly right, if we were to send it back, true subjunctive, what kind of additional evidence do you think that the defendant now alerted to the issue of inevitable discovery would introduce or could have introduced? There were four policemen there. Three testified. One was offered to the defense and chose not to testify. I mean, the defense decided not to take them up on it. What do you think defense counsel could do now? Give us some kind of ‑‑ who might he subpoena? What might he do? Bring in the chief of police. Bring in other officers who might say something different than what these officers would say. You could make inquiry. No, other than the possibility that you could subpoena a bunch of people who might say something different. That's just speculation. Anything above and beyond speculating that there might be somebody who would say something different, what do you think you might find? Well, I don't know what I would find without some speculation, obviously, because there's nothing known to me that I can say I could present. I certainly would have liked it more if counsel at the hearing had asked some questions or called some witnesses, but I can't do that and presume what would have been said or done. Are you contending that the government failed in their burden of proof, which they have on a suppression motion? No, not based on this record. Walter, do you have anything further? No. Anything further? All right, Counselor, thank you very much. Thank you. May it please the Court, my name is Ted Smith. I'm an Assistant United States Attorney for the Middle District of Pennsylvania, representing the United States, the appellee in this appeal. This case is different from your typical inevitable discovery case, insofar as there is such a thing as a typical inevitable discovery case. But if you look at the seminal case, Nix v. Williams, what the government or the state contended in the suppression hearing in Nix v. Williams was that the Christian burial speech was not an interrogation. The Supreme Court ends up holding in Brewer v. Williams that it was an interrogation, and then they remand, and they specifically raise the possibility of inevitable discovery of the body, and evidence is presented then at a second suppression hearing regarding the doctrine of inevitable discovery. What would have happened with this search had the Christian burial speech not been to lead the people to the body. This is very different because the inevitable discovery that the court found was the same factual inevitable discovery that the United States argued and presented evidence of at the second suppression hearing. And that's what's so different about this. I really think the difference between what the district court found and what we were arguing is truly a hair-splitting difference. The district court found that there was an inventory policy and procedure. The court simply found that this initial examination of the contents of the backpack was not a proper part of that inventory procedure. The court didn't have to even speculate as the court did in Nix v. Williams regarding what would have happened. So this is not inevitable discovery. That's a red herring. The finding essentially was that there was a proper search at the station house? Yes. Or a proper inventory. A proper inventory. Inventory search is not a search. It's not a search. Inventory search. Inventory search, but, you know, we try to avoid even putting the word search in there, a proper inventory at the station house. Wait a minute. You lost me there. There's a difference between inventorying and, in this context, there's a difference between a proper inventory and inevitable discovery? I think the facts required to support the one or the other are the same. And the court made a legal distinction that we did not think was significant. The district court did. Judge Rendell thought it was significant in footnote 10. Judge Cain, to some degree, followed the very point that Judge Rendell made in footnote 10 to her initial opinion in this case. It's in my brief on page 10 of our brief. Judge Rendell made something of a distinction there. But, I mean, reading it, while the backpack here, if it is somehow properly linked to the Jeep or to Sinclair, may have been seized as part of an inventory search, we cannot determine whether such a search would have inevitably led to the discovery of the backpack's contents. Yeah, but go to the very first sentence. It is unclear. That same footnote. It is unclear whether the government takes the position that the police were actually performing an inventory search at the time the backpack was seized, meaning out in the field when it was 15 feet in the snow from the car, or 20 feet, depending on which one officer said 15 to 20, or the backpack would have inevitably been taken in and searched when the Jeep was impounded and the inventory was catalogued, then she gives a general report. A record at that point. So it would have been a nixed situation as of that time because we didn't really know. And our answer to your question, our answer to the question posed by Judge Rendell is yes. Yes. I'm asking an either or question. Our answer is both. But Judge Cain found that the search was a search. It was not part of the inventory. In other words, the judge found, Judge Cain found, that if they had, in effect, if they had picked it up and just taken it to the station house, that might have been part of the inventory process. But that looking into the bag in the snow at night when everything was going on next to Route 81, which is probably a 25-lane highway or something like that. Two lanes each direction. Is that all? In Harrisburg, that's big. This is not New Jersey. This is not the turnpike. But to Judge Cain, in effect, I believe she thought that she was, you know, following this footnote and making the very determination that the court said it couldn't make the first time around. I think the judge did think she was making that determination. I think we presented the evidence as to what we considered to be the proper exception to the warrant requirement, which was that this was an inventory search in every respect. That the preliminary looking into the backpack was part of an established routine, even though it was not part of the written policy. The record doesn't say that. I'm skeptical. Your office is too good to. Thank you. Too good to have done what you did. I may be indulging in an extraordinary assumption that people take seriously what the Third Circuit writes, but I would think that somebody in your office would have read footnote number 10. Absolutely. And I would have thought that if, indeed, as you're telling us now, you went into this new hearing arguing inevitable discovery, that the record would reflect that a little better than it does. I mean, after all, the judge said just before the hearing, she said the hearing will be limited to, quote, testimony on the circumstances regarding the flight of the backpack from the car and the removal of the defendant from the car and the proximity of the defendant to the backpack. Now, frankly, I thought that when I saw the footnote in the prior opinion and I read this record, I said that office is too good to have done what you did. And they must have looked into it, and they must not be able to come forward with evidence that there were policies in place that met the criteria of our jurisprudences, for example, in the United States versus Salmon, or Salmon, where you have to have a policy that has limitations on, you know, preexisting criteria for exercise of discretion by the people conducting the inventory. Your Honor, we did look at the footnote. I did not litigate this second hearing. We're the first one. We did look at the footnote. I think the prosecutor disagreed with the theory of inevitable discovery and thought that this was properly admissible as an inventory search, as well as on the alternative grounds that she argued. And so because inventory search was certainly part of Judge Rendell's what this particular prosecutor believed the evidence showed, and this prosecutor introduced the inventory policy of the Harrisburg Police Department, introduced evidence that they followed that policy, that they actually inventoried the contents of the car, that they filled out. But it wasn't in the car. Well, that's an interesting point, but I don't think you can say that that was not properly to be inventoried as part of the contents of the car. I had the privilege, if you could call it that, about a month before I filed the brief in this case, of being involved in an accident that should have killed me, but I was wearing a seat belt. I flipped a truck, and things were in the back of the truck. It had a tonneau cover on it. That came out. Stuff was thrown all over where the truck was. It was in the famous Valentine's Day storm where roads didn't get plowed. And my backpack that I use for archery hunting was in there. And I remember lying in the ambulance and watching them. This wasn't in Harrisburg, so I'm not trying to testify to facts. I think one would normally expect that the police, as they gather up and they put that, they get the truck right in. Where do we have that in the record as to how they do handle this and where it goes? I want to go back a little bit. You told me when I was questioning you about paying attention to the footnote that the prosecutor in this case, not yourself, didn't think that this was an inevitable discovery situation. Well, if the prosecutor didn't think that, how on earth is the defense attorney supposed to discern that and ask questions appropriate to the inevitable discovery defense? They did. They did. The prosecutor did not think you had to get to that inevitable discovery. The prosecutor thought this was an inventory search from beginning to end. So the prosecutor presented all the evidence that the prosecutor needed to have the search upheld as an inventory search. The district court made a distinction that Judge Rendell, I agree, suggested to the court, perhaps in note 10, that we didn't think was a necessary distinction to draw. But all of the same evidence supported the one that supported the other. I can't imagine what other evidence anyone would have presented or would present at yet another suppression hearing, which I suppose if it occurs I will be conducting. I think where you're coming from is that at the beginning, there was no testimony about inventorying. So the concept of inevitable discovery, like as in Nix, was one of conjecture. You're saying that once you put in evidence of what actually happened, which you contend was sufficient to support a proper search, the use of the concept of inevitable discovery is a bit of a red herring. Yes, and I say it because I quote from the defendant's brief, page 7, the record as it exists, this is what they concede, the record as it exists shows that the police officers testified to a policy and place within the department that would have led to the search of the backpack eventually. The only thing I would disagree with on that is the words would have. You take would have out, the record as it exists shows that the police officers testified to a policy and place within the department that led to the search of the backpack eventually. Do we have in front of us, I don't have in the record, do we have a property report that shows backpack search drugs, sweater, cell phone, is that property report 7? Because I don't have that. And, in fact, when we tried to get the transcript. It's exhibit 7. I know, but we don't have it. Judge, I went looking for exhibits in this case. This is what happens when a case. Because we couldn't get the transcript. I can't find the exhibits. I did not have the transcript when I wrote the brief because it was not made part of the appendix. I'm not whining, but I'm just saying I was a bit of a. Your file does not contain the property report exhibit that was offered here? I cannot locate from Friday to the present. I have been unable to locate the exhibits with the property report. Maybe your colleague can. I would really like to see that. Well, I would certainly make an effort to do that and also get the inventory policy before the court. Mr. Smith, starting on page 41 or 42 of the transcript and going forward and elsewhere, there seems to be three reports that, in one way or another, constitute the inventory process. The first is the towed vehicle report, which is what they do when they tow a vehicle, they infer what's in the vehicle. The second, and you'll see this, this is exhibit 7, which starts on the bottom of page 44, did you also file a recovered property report? It's different than a towed vehicle report. And then I think, as I read this, would include stuff found at the scene or something that they took and seized, maybe from the defendant himself from a searching defense, something they would seize that wasn't in the vehicle. But maybe all that talks about so far is the fact they seized a backpack. We need something that says they went in. There's more than that. There's a third report that's referenced. I just can't put my hand up, but I know it's in here. Well, there's a letter. No. There's the letter that goes to the property office. Let Judge Aranis finish. There's a third report, and that's an evidence log, because there was testimony by one of the officers that if they seized something that would, in their judgment, might be evidential, it doesn't go in the towed property report, it doesn't go in the recovered property, it goes in an evidence log and is even sent, and this is just in the transcript, is even sent to a different location. The person who's in charge of holding the evidence, for instance, the crack, would not go to the recovered property room. It would go to some other room where evidence is stored in Harrisburg. So you have three different reports that are all discussed in here, in one way or another. What we don't have, however, is the evidence log was never offered. I don't see it ever having been offered in an exhibit. However, the towed vehicle report was offered. That's number six. And the property recovered report was offered. That's number seven. And, although there is reference to the evidence log in here, because I don't have an index, I can't put my finger on it, but I know it's there. I recall the same testimony. Right. It was not introduced in the evidence. And that was not introduced, so we never even, that's not even, we don't know what's on that. But I think everything, Your Honor, is reciting indicates that the police followed their inventory procedure that's set forth in the general order that was also introduced into evidence, because they did prepare these reports. Who knows? That might be my point. Well, and I understand that, Your Honor, and I appreciate it. But, I mean, our intention here is to get at the truth. Where is the testimony that once they get the backpack in, there's a policy that they open it up and inventory the items inside of it? The testimony is that the written policy makes no distinction between closed containers. The officer actually on cross-examination by defense counsel said that he and every other officer he was aware of interpreted the written policy to mean that closed containers should also be searched in order to, or inventoried in order to make sure that you had all of the items. And then there was the reference to the gold bullion bars. Of course you inventory the contents of closed containers, otherwise they'll say. Sure. There's another question? The red light is on. Yeah, I understand. What is your position? Should we be considering now the correctness of Judge Kane's ruling? In other words, legally, should we be considering whether she ruled correctly or incorrectly, or should we be limiting our consideration to just whether there was, in effect, a procedural or almost a due process type of error in the fact that the words inevitable discovery never crossed the lips of the prosecutor throughout the 94 pages or whatever it is of this particular transcript? I think you're limited to the procedural issue. I mean, obviously I think the court has the power to raise other issues. I'm not saying you can't, but I'm saying that this court should, as a matter of sound appellate practice, do exactly what I did in the brief, and that is take the appeal as it finds it and address the issue that was raised.